Good morning, Your Honor. Mr. Kimes. Thank you, Your Honor. May it please the Court, my name is Rodney Kimes. I'm here on behalf of Eric Trotter, Kayla Petrie, and Connie Case, where Mr. Trotter and Ms. Jackson particularly were significantly heard. Mr. Trotter had a policy of insurance of $500,000 through Harleysville Insurance. Harleysville Insurance, the policy itself has competing language within the policy. There's a 1997 endorsement, it's called a general endorsement regarding uninsured motorist coverage, and there's a 2008 endorsement that I'll refer to as the Illinois endorsement, or the 2008 endorsement. Both of those endorsements have language in them that says that they're going to substitute. Those aren't the dates of the endorsements, you're referring to the copyright dates. I apologize, Judge. The policy was issued once with all of these endorsements in it. True, Judge. And the question is whether the one that says per accident trumps the one that says per person. Very true. So the is a 2011 policy, I think, right? It is a 2011 policy. So, lose the copyright dates, they have no influence here. Reading the policy together, if you read the policy together, there is language in each one of those particular endorsements that say that they are superseding a different endorsement. They are taking out the other endorsement. So because you read the policy together, like the court pointed out, you have to, which one of those two endorsements cancel out the other endorsement? Well, the general endorsement for underinsured motorist coverage, it's titled underinsured motorist coverage-Illinois. It doesn't say it replaces or displaces a particular provision in another endorsement, but the single underinsured motorist limit does contain that limiting language. It does explicitly say that it replaces subparagraph A of the limit of liability provision in the general underinsured motorist coverage endorsement. That seems to me to control the interpretation here. And I understand that, but it says the general policy, it says the circumvents or takes out the policy. We don't have that particular provision in this policy. We have an Illinois policy. We have a particular category that says we take out this language in this endorsement. It doesn't say we take it out of the Illinois endorsement. Well, that's the only underinsured motorist coverage endorsement in the policy. In other words, the single underinsured limit, which refers to per accident, can only be coverage-Illinois, because that's the only UIM coverage in the policy. And then there's the declarations page, which clearly indicates that the limit for UIM bodily injury is $500,000 each accident. Medical payments are per person. If you read all of those policies together, it doesn't back up. It's capable of one more meeting if it takes out that paragraph. Not reasonably so. I appreciate what the court is saying. The only reasonable way to read it is according to what it actually says. What it says, though, is that we're going to read all of these things together. And then at the bottom, and I was trying to find that for the court, but at the bottom of each it says, the endorsement changes the policy. Please read it carefully. So each one of those policies, even the underinsured motorist coverage Illinois, says in bold letters at the top, this endorsement changes the policy. Please read it carefully. It changes the base policy. And that's what endorsements do. You buy base coverage for auto accident liability. And if you want UM or UIM coverage, you've got to buy that coverage. And it's reflected in an endorsement. The scope of it is reflected in an endorsement. But we've clearly got the per accident limit in the single underinsured motorist limit endorsement, which has to be given some meaning. And I've inarticulately explained my point. That's exactly my point. The underlying policy is the policy we're dealing with. Both of these endorsements say that we are... The underlying policy doesn't have UIM coverage, but for the endorsements. But in the endorsements, Your Honor, and I don't want to go around in a circle, but the endorsements themselves say that they both change the policy. And it doesn't say this one changes, this one changes. It says they both change the policy. And I understand the logic the court is saying. This comes first, and this comes second, and this comes third. But there's nothing in the record to suggest that. It's not really a matter of order. I mean, they could mix up these pages and it wouldn't make any difference in terms of the interpretation. It's what the language says. And the language of the single UIM limit says per accident. And it also says that paragraph A of the UIM endorsement is replaced by the following limit, which has the per accident language. So it knocks out the per person. But for that single UIM limit, you would have your per person coverage. But it's been knocked out. And the next part of my argument is, if there's only a $500,000 policy, and only everybody received less than $250,000 from the previous or the underlying liability policy, nobody gets to the $500,000. That's just a per person argument. This is a per accident policy. Okay. If there aren't any other questions, I'll... Thank you, Mr. Coggins. Mr. Reces. Good morning, and may it please the Court, Counsel. My name is Mike Reces, and I'm here today on behalf of the Pelley Harleysville Insurance Company. The District Court should be affirmed for two reasons. First, the policy and the endorsements are clear and unambiguous. The policy contains two endorsements relating to underinsured motorist coverage, in addition to what I think Judge Sykes referred to as the base policy provisions. First, we have a four-page underinsured motorist coverage endorsement that's identified in the declarations as 447. It has all of the parts of what the coverage provides, an insuring agreement, a limit of liability section, definitions, exclusions, along with other provisions. Now, there's a second endorsement. That's identified in the declarations as 402. It's called a single underinsured motorist limit endorsement. It's only one page. Both endorsements were effective from the beginning of the policy period. How do we know that? It says so in the declarations. It's relevant to this appeal. The single limit endorsement states that it, quote, replaced, close quote, the limit of liability provision of the underinsured motorist coverage endorsement. It goes on to state that the limit shown in the declarations for the coverage is the, quote, maximum limit of liability for all damages, close quote, because of bodily injury, and that's from any one accident, regardless of the number of claims made, insureds, vehicles insured, or premiums paid. And it's shown in the declarations, as I think Judge Sykes also referred to, the limit of liability shown in the declarations is $500,000 for each accident, and that's surprisingly consistent with that each accident limit. The declarations also show uninsured motorist coverage and bodily injury liability coverage also with the same each accident limit, based on similar single limit endorsements. Now, granted, the parties may disagree about what the policy says, but that disagreement doesn't make anything ambiguous about this provision. The single limit is controlling because it and it alone replaced the limit of liability provision of the other endorsement, and it incorporates the each accident limit shown on the declarations. When the two endorsements are read together, the single limit of $500,000 for each accident in the declarations replaced the limit of liability section in the other endorsement, and plaintiffs have offered no other alternative interpretation that reasonably shows any ambiguity about the each accident limit. Second, the district court did not resolve any factual dispute about the effective dates of each endorsement. The parties stipulated to the certified copy of the policy. The construction of the policy is a question of law. Even determining whether there's an ambiguity presents for the court a question of law. Does your company draft these forms, or is there some centralized place that you rely on? Yes, Judge Edelman. We are using the forms that come out of the Insurance Services Office, and that refers, that is at the bottom. If you, and I know I'm some distance away from you, but if you look at the bottom of each endorsement, it has what's called Copyright Insurance Services Office. So we're using a standard industry form that comes out of one central location, the Insurance Services Office. And the fact that the two endorsements have different copyright dates doesn't say anything about when they're effective. You go to the declarations for that. The declarations are as much part of the policy as anything else, and they clearly say they're both effective from the beginning of the policy period. All the court did here was read the declarations and the policy parts together as written and as required. Both endorsements are effective from the beginning of the policy period, but the particular form was copyrighted at different times. There's no other reasonable interpretation of the policy. Having recovered a total of $500,000 from the at-fault driver, plaintiffs do not dispute that they could not recover further under the Harleysville policy once the limit is judicially determined to be $500,000. And even if they didn't agree with that, and I'm not sure if we heard that argument this morning, if you just look at Cincinnati v. Worrell, W-E-H-R-L-E, discussed at pages 25 and 27 of our brief, that argument can be put to rest because the plaintiffs collectively recovered the $500,000 accident limit of the Harleysville policy. There was no gap to fill between the two, and the plaintiffs cannot recover further in underinsured motorist coverage. To conclude by way of summary, this case is a straightforward application of the policy. The district court properly interpreted and applied the policy as written. We ask you to affirm. Thank you. Thank you, Mr. Rees. Anything further, Mr. Kimes? Thank you very much. The case is taken under advisement.